No. 25-2607

# In the
# United States Court of
# Appeals for the
# Third Circuit

MIKE OZIEGBE AMIEGBE,

*Petitioner,*

– v. –

PAMELA BONDI, Attorney General,

*Respondent.*

**APPENDIX**
**Volume I**
Agency No. A 204739223

**DETAINED**

Benjamin Osorio, Esq.
Alaina Taylor, Esq.
Counsel for Petitioner
Murray Osorio PLLC
4103 Chain Bridge Rd., Ste. 300
Fairfax, Virginia 22030
Telephone: (703) 352-2399
Facsimile: (703) 763-2304

APPENDIX
Volume I
INDEX

Page

Petition for Review filed on August 20, 2025………………………………………..........1

Decision of the Board of Immigration Appeals,
        August 13, 2025 ............................................................................................ 16

Pre-BIA Decision Information ................................................................................21

No.

# In the
# United States Court of
# Appeals for the
# Third Circuit

---

MIKE OZIEGBE AMIEGBE,

*Petitioner,*

– v. –

PAMELA BONDI, Attorney General,

*Respondent.*

---

**PETITION FOR REVIEW OF A FINAL
ORDER OF THE BOARD OF IMMIGRATION APPEALS**
Agency Nos. A 204739223

**DETAINED**

---

Petitioner Mike Oziegbe Amiegbe hereby petitions this Court for review of the Board of Immigration Appeals order sustaining DHS's appeal from a Decision of the Immigration Court, overturning his grant of deferral under the Convention Against Torture and ordering him removed to Nigeria.

A copy of the BIA's opinion and the Immigration Judge's opinion

are attached hereto as Exs. 1-2. *See* 8 U.S.C. § 1252(c)(1). To date, no court has upheld the validity of the orders. See 8 U.S.C. § 1252(c)(2).

Jurisdiction is proper pursuant to 8 U.S.C. § 1252(a). Venue is asserted pursuant to 8 U.S.C. § 1252(b)(2) because the Immigration Judge completed proceedings in Elizabeth, New Jersey, within the jurisdiction of this judicial circuit.

This petition is timely filed within 30 days of the final order of the Board of Immigration Appeals. *See* 8 U.S.C. § 1252(b)(1).

Respectfully submitted,

Dated: August 20, 2025

//s// Benjamin Osorio
Benjamin Osorio, Esq.
*Counsel for Petitioner*

1



# U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Bretz, Kerry William**
**Bretz&  Coven, LLP**
**305 Broadway  Suite 100**
**New York  NY  10007**

**DHS/ICE Office of Chief Counsel - ELZ**
**625 Evans Street, Room 135**
**Elizabeth NJ 07201**

**Name: AMIEGBE, MIKE OZIEGBE**          **A  204-739-223**

**Date of this Notice:    8/13/2025**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam:  Docket

004



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**AMIEGBE, MIKE OZIEGBE**
**A 204739223**
**CLINTON COUNTY CORRECTIONAL**
**58 PINE MOUNTAIN RD**
**MCELHATTAN PA 17748**

**DHS/ICE Office of Chief Counsel - ELZ**
**625 Evans Street, Room 135**
**Elizabeth NJ 07201**

**Name: AMIEGBE, MIKE OZIEGBE**          **A  204-739-223**

**Date of this Notice:    8/13/2025**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam:  <u>Docket</u>

005

NOT FOR PUBLICATION

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Mike Oziegbe AMIEGBE, A204-739-223

Respondent

**FILED**
Aug 13, 2025

ON BEHALF OF RESPONDENT: Kerry W. Bretz, Esquire

ON BEHALF OF DHS: Sarah B. Campbell, Assistant Chief Counsel

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, Elizabeth, NJ

Before: Goodwin, Appellate Immigration Judge; Hunsucker, Appellate Immigration Judge;
Mullane, Appellate Immigration Judge

Opinion by Appellate Immigration Judge Hunsucker

HUNSUCKER, Appellate Immigration Judge

This matter was last before us on October 3, 2024, when we remanded the record for the Immigration Judge to consider the arguments raised by the Department of Homeland Security ("DHS"), reconsider the respondent's and his witness' credibility under the totality of the circumstances, and reconsider the respondent's eligibility for deferral of removal under the Convention Against Torture ("CAT")[1] applying the proper standard and precedents. On February 5, 2025, the Immigration Judge issued a decision finding the respondent was not credible except for one particular aspect of his claim. The Immigration Judge also found the respondent eligible for deferral of removal under the CAT. 8 C.F.R. § 1208.17(a). DHS appeals the decision. The respondent has filed a brief in response to the appeal. The appeal will be sustained.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R § 1003.1(d)(3)(ii).

We assume the parties' familiarity with the procedural and factual history in this case. On appeal, DHS argues that the Immigration Judge erred by granting deferral of removal because the respondent failed to establish that it is more likely than not that he would be tortured in Nigeria or that a public official would acquiesce to his torture (DHS' Br. at 20-25). Specifically, DHS argues

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. § 1208.16(c)-1208.18.

A204-739-223

that the respondent has not shown it is more likely than not that he would be subject to severe physical or mental pain and suffering if he were returned to Nigeria (DHS' Br. at 20-22). Further, DHS argues that the Immigration Judge improperly determined that government officials in Nigeria would acquiesce to future torture of the respondent based on generalized country conditions evidence showing that "non-state actors commit human rights abuses and government corruption exists in Nigeria" (DHS' Br. at 23-24).

We agree with DHS that the Immigration Judge erred in finding that a government official in Nigeria would likely acquiesce to the torture of the respondent. The Immigration Judge's findings improperly rely on general evidence of country conditions and speculation not supported by the record (DHS' Br. at 23-25). The Immigration Judge found that the increasing violence and criminality in Nigeria coupled with the lack of security forces make it likely that the government will fail to protect the respondent from harm (IJ at 5). Additionally, the Immigration Judge found that law enforcement is aware of the threats that the respondent's family has received and gave no indication of measures of protection being taken. *Id*. However, the police reports submitted by the respondent indicate that the investigatory efforts are ongoing against the two men who were arrested for attacking the respondent's family (Exh. 5; DHS' Br. at 24). The record further reflects that law enforcement interrogated and obtained confessions from the perpetrators as well. *Id*. Moreover, the respondent's family continued to seek and obtain help from law enforcement during a subsequent attack. *Id*.

The record does not support a legal finding that any government officials would more likely than not acquiesce in the respondents future torture. *See Galeas-Figueroa v. Att'y Gen. U.S.*, 998 F.3d 77, 93 (3d Cir. 2021) ("a government that investigates reports of private violence is not willfully blind to that violence."). Country reports reflecting a high incidence of violent crime, corruption, and inefficiency or lack of success in preventive law enforcement efforts are insufficient, standing alone, to establish a likelihood of acquiescence. *See Doe v. Att'y Gen. of U.S.,* 956 F.3d 135, 146 (3d Cir. 2020) (listing various ways beyond generalized evidence in which a respondent may fill the "evidentiary gap in proof about how the government would respond if asked."*); Matter of J-J-G-*, 27 I&N Dec. 808, 817 (BIA 2020) (stating that generalized evidence of violence and crime in a country is insufficient to establish the requisite likelihood of torture by or with the consent or acquiescence of a public official or an individual acting in an official capacity); *see also Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 592 (3d Cir. 2011) (specific grounds must exist to indicate there is a personal risk of torture).

Therefore, we conclude that the immigration Judge erred in determining that the respondent established that he more likely than not would be tortured by or with the acquiescence (including the concept of willful blindness) of a public official of the Nigerian government upon removal (IJ at 2-5). *See* 8 C.F.R. § 1208.17(a) and 1208.18(a); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015).

Thus, we reverse the grant of deferral of removal under the CAT. As the aforementioned findings are dispositive of the applicant's claim for protection, we need not address DHS' remaining arguments on appeal. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam)

2

A204-739-223

("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

Accordingly, the following orders will be entered.

ORDER: The appeal is sustained

FURTHER ORDER: The Immigration Judges February 5, 2025, decision granting CAT protection is vacated, and the respondent is ordered removed from the United States to Nigeria.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

3

2

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
ELIZABETH, NEW JERSEY

File No.:    A204-739-223    )
    )
In the Matter of    )
    )
AMIEGBE, Mike Oziegbe    )    DETAINED
    )
Respondent.    )
    )

**ON BEHALF OF RESPONDENT**
Kerry W. Bretz, Esq.
Bretz & Coven, LLP
305 Broadway, Ste 100
New York, New York 10007

**ON BEHALF OF ICE/DHS**
Sarah B. Campbell
Assistant Chief Counsel
625 Evans St., Rm 135
Elizabeth, New Jersey 07201

**DECISION AND ORDER OF THE IMMIGRATION JUDGE**

**I.    Procedural History**

On December May 6, 2024, the court granted the respondent's application for deferral of removal under the Convention Against Torture ("CAT"). The Department of Homeland Security ("DHS") subsequently appealed the decision, and the Board of Immigration Appeals ("BIA") remanded the record. The BIA instructs the court to apply the correct legal standard in analyzing the respondent's credibility, consider the arguments raised by DHS, and reconsider the respondent's and his witness' credibility under the totality of the circumstances. *See* BIA Remand Opinion, filed Oct. 03, 2024. The BIA further instructs the court to provide "specific, cogent reasons" to support the credibility finding. *Id*. Lastly, the BIA instructs the court to reconsider the respondent's eligibility for deferral of removal under the CAT applying the proper standard and precedents. Because this is a supplemental opinion, the underlying factual and procedural history contained in the court's decision rendered on May 6, 2024, are incorporated in their entirety and not reiterated herein.

**II.    Legal Standard and Analysis**

A. Credibility

The Court must make a determination as to the respondent's credibility. A credibility finding is independent of an analysis of the sufficiency of an applicant's evidence. *Chen v. Gonzales*, 434 F.3d 212, 221 (3d Cir. 2005). Pursuant to the REAL ID Act, credibility

AMIEGBE, Mike Oziegbe
A204-739-223

determinations will be made "considering the totality of the circumstances and all relevant factors." INA § 240(c)(4)(C). A trier of fact may base a credibility determination on:

> demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor. There is no presumption of credibility, however, if no adverse-credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

INA § 240(c)(4)(C) (emphasis added).

The DHS has raised several arguments that undermine the respondent's credibility. There were several inconsistencies between the respondent's testimony and the evidence of record regarding the attacks on his family in Nigeria and his entries into the United States that were not included on his asylum application. Furthermore, the respondent's testimony contained internal inconsistencies regarding whether there was a hospital nearby where his family could seek treatment and whether his father resides in Nigeria. The respondent appears to have embellished several aspects of his testimony and could not meaningfully explain why several statements he made during the hearing were omitted from his application. The Court notes, however, that the threats he received after his witness information was leaked is substantiated by the record, despite the DHS's concerns that it was not mentioned in his asylum application. Exh. 5, Tab E. Nonetheless, considering the totality of the circumstances, the Court finds the respondent was not a credible witness.

### B. Deferral of Removal under the CAT

In this matter, the respondent is ineligible for asylum, withholding of removal under section 241(b)(3) of the Act, and withholding of removal under the CAT because, as noted in the court's previous decision, he has been convicted of a particularly serious crime. Thus, the court will only address the respondent's eligibility for deferral of removal under the CAT.

An adverse credibility finding does not necessarily mandate a denial of a claim under the CAT. *See Zubeda v. Ashcroft*, 333 F.3d 463, 476 (3d Cir. 2003). To be eligible for deferral of removal under the CAT, an applicant must demonstrate it is more likely than not, or, in other words, there is a greater than fifty percent chance that he would be subject to torture if he returned to his country of nationality. *See* 8 C.F.R. § 1208.16. Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." 8 C.F.R. § 1208.18(a)(1). The regulations further instruct that "[t]orture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment." 8 C.F.R. § 1208.18(a)(2). For an act to constitute torture under the CAT, it must be:

AMIEGBE, Mike Oziegbe
A204-739-223

(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

8 C.F.R. § 1208.18(a)(1).

In assessing whether the applicant has satisfied the burden of proof, the court must consider all evidence relevant to the possibility of future torture, including evidence that the applicant has suffered torture in the past; evidence that the applicant could relocate to a part of the country of removal where he is not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal; and other relevant information on country conditions. 8 C.F.R. § 1208.16(c)(3). Eligibility for relief under the CAT cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen. *Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (AG 2006); *see also Matter of M-B-A-*, 23 I&N Dec. 474, 479 (BIA 2002).

The likelihood of future torture is a mixed question of law and fact. *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010). The court must examine two distinct parts: "1) what is likely to happen to the [respondent] if removed; and 2) does what is likely to happen amount to the legal definition of torture?" *Id.* The first question is factual and the court must make a finding of fact as to what exactly would happen to an applicant upon his or her return. *Id.* The second question is legal and the court must determine whether what is likely to happen to the applicant upon his or her return amounts to torture. If the court determines that the applicant has failed to demonstrate the second prong, in that the harm he or she would suffer does not amount to the legal definition of torture, there is no need to make a factual finding as to the first prong. *Green v. Att'y Gen.*, 694 F.3d 503, 508 (3d Cir. 2012) (citing *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.")). An applicant must also demonstrate that he or she faces a particularized risk of suffering harm that rises to the level of torture. *See Matter of S-V-*, 22 I&N Dec. 1306, 1313 (BIA 2000) (stating that "specific grounds must exist that indicate the individual would be personally at risk").

An applicant must also establish the likelihood that he or she will be subjected to torturous acts inflicted by or at the instigation of or with the consent or acquiescence of a public official or a person acting in an official capacity. *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58 (3d Cir. 2007); *Matter of Y-L-*, 23 I&N Dec. 270 (AG 2002). The acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and breach his legal responsibility to intervene to stop such activity. *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 68 (3d Cir. 2007); 8 C.F.R. § 1208.18(a)(7). Awareness can be satisfied by showing that the government has actual knowledge of the torturous conduct or is willfully blind to such conduct. *See Pieschacon-Villegas v. Att'y Gen.*, 671 F.3d 303, 311 (3d Cir. 2011). The determination of "whether likely government conduct equates to acquiescence is a mixed question of law and fact." *Kaplun v. Att'y Gen.*, 602 F.3d 260 (3d Cir. 2010); *see also Myrie v.*

AMIEGBE, Mike Oziegbe
A204-739-223

*Att'y Gen.*, 855 F.3d 509, 517 (3d Cir. 2017). The IJ must conduct a two-step analysis: first, the IJ must make a factual finding as to how public officials will likely act in response to the harm the petitioner fears. *Myrie v. Att'y Gen.*, 855 F.3d 509, 517 (3d Cir. 2017); *Quinteros v. Att'y Gen.*, 945 F.3d 772, 788 (3d Cir. 2019). Next, the IJ must apply the legal standard for acquiescence to determine whether this response establishes that a public official was 'aware[] of [the torturous] activity' and subsequently breaches his or her 'legal responsibility to intervene to prevent such activity.'" *Myrie v. Att'y Gen.*, 855 F.3d 509, 517 (3d Cir. 2017) (citing 8 C.F.R. § 1208.18(a)(7)); *see Quinteros v. Att'y Gen.*, 945 F.3d 772, 788 (3d Cir. 2019).

Here, although the court finds the respondent was not a credible witness, the evidence of record makes clear that he and his family in Nigeria received threats after it was leaked that he would be testifying as a witness in the criminal case against the Omoruyi brothers and Kelechi Ume. Exh. 5. Specifically, the letter from Assistant U.S. Attorney Christopher J. Markham corroborates the respondent's claim in this regard and states:

> [T] he government also has concerns for Mr. Amiegbe's safety. The defendants in *United States v. Omoruyi* shared documents with Amiegbe's name with others in the Nigerian community in Boston (where Mr. Amiegbe currently lives) as well as individuals in Nigeria (where Mr. Amiegbe will be deported after serving his sentence), and Mr. Amiegbe was later contacted by one or more of those individuals prior to trial about his cooperation. The Court in *United States v. Omoruyi* correctly identified this as a violation of the protective order and as threatening Mr. Amiegbe's safety, resulting in the Court adding several conditions of pretrial release on the defendants.
>
> Mr. Amiegbe and his attorney have also repeatedly identified their concerns for Mr. Amiegbe's safety once he gets deported to Nigeria. These concerns are certainly valid given the violent nature of criminal elements in Nigeria, the fact that Mr. Amiegbe's cooperation against multiple Nigerians has been disclosed to co-conspirators in Nigeria, and the fact that Mr. Amiegbe will be deported to Nigeria after his period of incarceration.

Exh. 5 at 48. Thus, the Court finds that this particular aspect of the respondent's claim is credible and corroborated. Furthermore, based on this information, the Court finds it likely that, if the respondent returns to Nigeria, he will be found by associates of the Omoruyi brothers and severely harmed or killed, which constitutes torture under the CAT. The respondent's family members in Nigeria have received several threats from gang members and other associates of the Omoruyi brothers, so there is a particularized risk of harm to the respondent should he return.

The letter from Assistant U.S. Attorney Markham also reflects the U.S. government's concern over the respondent's safety in Nigeria due to the level of violence committed by criminal elements. *Id.* Further, the 2022 U.S. Department of State Human Rights Report on Nigeria states that "[n]onstate actors committed arbitrary and unlawful killings, disappearances, physical abuse, and other mistreatment," "[c]riminal gangs killed civilians," and there is "serious government corruption." Exh. 5 at 82. The Report also states:

4 of 5

013

AMIEGBE, Mike Oziegbe
A204-739-223

Many states, in response to increased violence, insecurity, and criminality that exceeded the response capacity of government security forces, utilized local "security" vigilante forces. These local forces usually reported to the state governor. Civilian authorities did not always maintain effective control over the security services. There were reports members of the security forces committed numerous abuses.

Exh. 5 at 80. As such, because of the increasing violence and criminality in Nigeria and the lack of security forces, the Court finds the government will likely fail to protect the respondent from harm from gangs or criminal elements associated with the Omoruyi brothers when he returns to Nigeria. Law enforcement is aware of the threats that the respondent's family has been receiving as a result of his cooperation in criminal cases in the United States, yet there is no indication that the respondent's family is under any type of order of protection. The evidence of record as a whole demonstrates that public officials in Nigeria would acquiesce to the serious physical harm that will likely happen to the respondent.

Accordingly, the Court finds that the respondent has met the requirements for deferral of removal under CAT.

## III.    Conclusion

In light of the foregoing, the following order shall be entered:

### ORDER

**IT IS HEREBY ORDERED** that the respondent's application for deferral of removal under the Convention against Torture is **GRANTED**.

**IT IS FURTHER ORDERED** that the respondent be ordered removed to Nigeria and that his removal be deferred.

_2-5-25_
Date

Hon. Adrian Armstrong
U.S. Immigration Judge

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2025, I electronically filed the foregoing Petition for Review, and all attachments thereto, with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. *See* Fed R. 25(d). I further certify that a copy of this Petition for Review, and all attachments thereto, will be delivered via CM/ECF system, which will send notice of filing to counsel for Respondent. *See* Fed R. App. P. 25(d).

/s// Benjamin Osorio
Benjamin Osorio, Esq.
*Counsel for Petitioner*



## U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Bretz, Kerry William**
**Bretz&  Coven, LLP**
**305 Broadway  Suite 100**
**New York  NY  10007**

**DHS/ICE Office of Chief Counsel - ELZ**
**625 Evans Street, Room 135**
**Elizabeth NJ 07201**

**Name: AMIEGBE, MIKE OZIEGBE**          **A  204-739-223**

                              **Date of this Notice:    8/13/2025**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

                              Sincerely,

                              John Seiler
                              Acting Chief Clerk

Enclosure

                              Userteam:  Docket

016



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

| | |
|---|---|
| **AMIEGBE, MIKE OZIEGBE** | **DHS/ICE Office of Chief Counsel - ELZ** |
| **A 204739223** | **625 Evans Street, Room 135** |
| **CLINTON COUNTY CORRECTIONAL** | **Elizabeth NJ 07201** |
| **58 PINE MOUNTAIN RD** | |
| **MCELHATTAN PA 17748** | |

**Name: AMIEGBE, MIKE OZIEGBE**         **A 204-739-223**

**Date of this Notice:    8/13/2025**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam:  Docket

017

NOT FOR PUBLICATION

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Mike Oziegbe AMIEGBE, A204-739-223

Respondent

<div style="float:right; border:1px solid black; padding:1em;">

**FILED**
Aug 13, 2025

</div>

ON BEHALF OF RESPONDENT:  Kerry W. Bretz, Esquire

ON BEHALF OF DHS:  Sarah B. Campbell, Assistant Chief Counsel

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, Elizabeth, NJ

Before: Goodwin, Appellate Immigration Judge; Hunsucker, Appellate Immigration Judge;
Mullane, Appellate Immigration Judge

Opinion by Appellate Immigration Judge Hunsucker

HUNSUCKER, Appellate Immigration Judge

This matter was last before us on October 3, 2024, when we remanded the record for the Immigration Judge to consider the arguments raised by the Department of Homeland Security ("DHS"), reconsider the respondent's and his witness' credibility under the totality of the circumstances, and reconsider the respondent's eligibility for deferral of removal under the Convention Against Torture ("CAT")[1] applying the proper standard and precedents. On February 5, 2025, the Immigration Judge issued a decision finding the respondent was not credible except for one particular aspect of his claim. The Immigration Judge also found the respondent eligible for deferral of removal under the CAT. 8 C.F.R. § 1208.17(a). DHS appeals the decision. The respondent has filed a brief in response to the appeal. The appeal will be sustained.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R § 1003.1(d)(3)(ii).

We assume the parties' familiarity with the procedural and factual history in this case. On appeal, DHS argues that the Immigration Judge erred by granting deferral of removal because the respondent failed to establish that it is more likely than not that he would be tortured in Nigeria or that a public official would acquiesce to his torture (DHS' Br. at 20-25). Specifically, DHS argues

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. § 1208.16(c)-1208.18.

A204-739-223

that the respondent has not shown it is more likely than not that he would be subject to severe physical or mental pain and suffering if he were returned to Nigeria (DHS' Br. at 20-22). Further, DHS argues that the Immigration Judge improperly determined that government officials in Nigeria would acquiesce to future torture of the respondent based on generalized country conditions evidence showing that "non-state actors commit human rights abuses and government corruption exists in Nigeria" (DHS' Br. at 23-24).

We agree with DHS that the Immigration Judge erred in finding that a government official in Nigeria would likely acquiesce to the torture of the respondent. The Immigration Judge's findings improperly rely on general evidence of country conditions and speculation not supported by the record (DHS' Br. at 23-25). The Immigration Judge found that the increasing violence and criminality in Nigeria coupled with the lack of security forces make it likely that the government will fail to protect the respondent from harm (IJ at 5). Additionally, the Immigration Judge found that law enforcement is aware of the threats that the respondent's family has received and gave no indication of measures of protection being taken. *Id.* However, the police reports submitted by the respondent indicate that the investigatory efforts are ongoing against the two men who were arrested for attacking the respondent's family (Exh. 5; DHS' Br. at 24). The record further reflects that law enforcement interrogated and obtained confessions from the perpetrators as well. *Id.* Moreover, the respondent's family continued to seek and obtain help from law enforcement during a subsequent attack. *Id.*

The record does not support a legal finding that any government officials would more likely than not acquiesce in the respondents future torture. *See Galeas-Figueroa v. Att'y Gen. U.S.*, 998 F.3d 77, 93 (3d Cir. 2021) ("a government that investigates reports of private violence is not willfully blind to that violence."). Country reports reflecting a high incidence of violent crime, corruption, and inefficiency or lack of success in preventive law enforcement efforts are insufficient, standing alone, to establish a likelihood of acquiescence. *See Doe v. Att'y Gen. of U.S.,* 956 F.3d 135, 146 (3d Cir. 2020) (listing various ways beyond generalized evidence in which a respondent may fill the "evidentiary gap in proof about how the government would respond if asked."*); Matter of J-J-G-*, 27 I&N Dec. 808, 817 (BIA 2020) (stating that generalized evidence of violence and crime in a country is insufficient to establish the requisite likelihood of torture by or with the consent or acquiescence of a public official or an individual acting in an official capacity); *see also Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 592 (3d Cir. 2011) (specific grounds must exist to indicate there is a personal risk of torture).

Therefore, we conclude that the immigration Judge erred in determining that the respondent established that he more likely than not would be tortured by or with the acquiescence (including the concept of willful blindness) of a public official of the Nigerian government upon removal (IJ at 2-5). *See* 8 C.F.R. § 1208.17(a) and 1208.18(a); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015).

Thus, we reverse the grant of deferral of removal under the CAT. As the aforementioned findings are dispositive of the applicant's claim for protection, we need not address DHS' remaining arguments on appeal. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam)

2

A204-739-223

("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

Accordingly, the following orders will be entered.

ORDER:  The appeal is sustained

FURTHER ORDER:  The Immigration Judges February 5, 2025, decision granting CAT protection is vacated, and the respondent is ordered removed from the United States to Nigeria.

NOTICE:  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

3

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
ELIZABETH, NEW JERSEY

File No.:     A204-739-223     )
                              )
In the Matter of              )
                              )
AMIEGBE, Mike Oziegbe         )          DETAINED
                              )
Respondent.                   )
                              )

**ON BEHALF OF RESPONDENT**
Kerry W. Bretz, Esq.
Bretz & Coven, LLP
305 Broadway, Ste 100
New York, New York 10007

**ON BEHALF OF ICE/DHS**
Sarah B. Campbell
Assistant Chief Counsel
625 Evans St., Rm 135
Elizabeth, New Jersey 07201

## DECISION AND ORDER OF THE IMMIGRATION JUDGE

### I.     Procedural History

On December May 6, 2024, the court granted the respondent's application for deferral of removal under the Convention Against Torture ("CAT"). The Department of Homeland Security ("DHS") subsequently appealed the decision, and the Board of Immigration Appeals ("BIA") remanded the record. The BIA instructs the court to apply the correct legal standard in analyzing the respondent's credibility, consider the arguments raised by DHS, and reconsider the respondent's and his witness' credibility under the totality of the circumstances. *See* BIA Remand Opinion, filed Oct. 03, 2024. The BIA further instructs the court to provide "specific, cogent reasons" to support the credibility finding. *Id.* Lastly, the BIA instructs the court to reconsider the respondent's eligibility for deferral of removal under the CAT applying the proper standard and precedents. Because this is a supplemental opinion, the underlying factual and procedural history contained in the court's decision rendered on May 6, 2024, are incorporated in their entirety and not reiterated herein.

### II.     Legal Standard and Analysis

#### A.     Credibility

The Court must make a determination as to the respondent's credibility. A credibility finding is independent of an analysis of the sufficiency of an applicant's evidence. *Chen v. Gonzales*, 434 F.3d 212, 221 (3d Cir. 2005). Pursuant to the REAL ID Act, credibility

021

AMIEGBE, Mike Oziegbe
A204-739-223

determinations will be made "considering the totality of the circumstances and all relevant factors." INA § 240(c)(4)(C). A trier of fact may base a credibility determination on:

> demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor. There is no presumption of credibility, however, if no adverse-credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

INA § 240(c)(4)(C) (emphasis added).

The DHS has raised several arguments that undermine the respondent's credibility. There were several inconsistencies between the respondent's testimony and the evidence of record regarding the attacks on his family in Nigeria and his entries into the United States that were not included on his asylum application. Furthermore, the respondent's testimony contained internal inconsistencies regarding whether there was a hospital nearby where his family could seek treatment and whether his father resides in Nigeria. The respondent appears to have embellished several aspects of his testimony and could not meaningfully explain why several statements he made during the hearing were omitted from his application. The Court notes, however, that the threats he received after his witness information was leaked is substantiated by the record, despite the DHS's concerns that it was not mentioned in his asylum application. Exh. 5, Tab E. Nonetheless, considering the totality of the circumstances, the Court finds the respondent was not a credible witness.

## B. Deferral of Removal under the CAT

In this matter, the respondent is ineligible for asylum, withholding of removal under section 241(b)(3) of the Act, and withholding of removal under the CAT because, as noted in the court's previous decision, he has been convicted of a particularly serious crime. Thus, the court will only address the respondent's eligibility for deferral of removal under the CAT.

An adverse credibility finding does not necessarily mandate a denial of a claim under the CAT. *See Zubeda v. Ashcroft*, 333 F.3d 463, 476 (3d Cir. 2003). To be eligible for deferral of removal under the CAT, an applicant must demonstrate it is more likely than not, or, in other words, there is a greater than fifty percent chance that he would be subject to torture if he returned to his country of nationality. *See* 8 C.F.R. § 1208.16. Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." 8 C.F.R. § 1208.18(a)(1). The regulations further instruct that "[t]orture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment." 8 C.F.R. § 1208.18(a)(2). For an act to constitute torture under the CAT, it must be:

AMIEGBE, Mike Oziegbe
A204-739-223

(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

8 C.F.R. § 1208.18(a)(1).

In assessing whether the applicant has satisfied the burden of proof, the court must consider all evidence relevant to the possibility of future torture, including evidence that the applicant has suffered torture in the past; evidence that the applicant could relocate to a part of the country of removal where he is not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal; and other relevant information on country conditions. 8 C.F.R. § 1208.16(c)(3). Eligibility for relief under the CAT cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen. *Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (AG 2006); *see also Matter of M-B-A-*, 23 I&N Dec. 474, 479 (BIA 2002).

The likelihood of future torture is a mixed question of law and fact. *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010). The court must examine two distinct parts: "1) what is likely to happen to the [respondent] if removed; and 2) does what is likely to happen amount to the legal definition of torture?" *Id.* The first question is factual and the court must make a finding of fact as to what exactly would happen to an applicant upon his or her return. *Id.* The second question is legal and the court must determine whether what is likely to happen to the applicant upon his or her return amounts to torture. If the court determines that the applicant has failed to demonstrate the second prong, in that the harm he or she would suffer does not amount to the legal definition of torture, there is no need to make a factual finding as to the first prong. *Green v. Att'y Gen.*, 694 F.3d 503, 508 (3d Cir. 2012) (citing *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.")). An applicant must also demonstrate that he or she faces a particularized risk of suffering harm that rises to the level of torture. *See Matter of S-V-*, 22 I&N Dec. 1306, 1313 (BIA 2000) (stating that "specific grounds must exist that indicate the individual would be personally at risk").

An applicant must also establish the likelihood that he or she will be subjected to torturous acts inflicted by or at the instigation of or with the consent or acquiescence of a public official or a person acting in an official capacity. *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58 (3d Cir. 2007); *Matter of Y-L-*, 23 I&N Dec. 270 (AG 2002). The acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and breach his legal responsibility to intervene to stop such activity. *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 68 (3d Cir. 2007); 8 C.F.R. § 1208.18(a)(7). Awareness can be satisfied by showing that the government has actual knowledge of the torturous conduct or is willfully blind to such conduct. *See Pieschacon-Villegas v. Att'y Gen.*, 671 F.3d 303, 311 (3d Cir. 2011). The determination of "whether likely government conduct equates to acquiescence is a mixed question of law and fact." *Kaplun v. Att'y Gen.*, 602 F.3d 260 (3d Cir. 2010); *see also Myrie v.*

AMIEGBE, Mike Oziegbe
A204-739-223

*Att'y Gen.*, 855 F.3d 509, 517 (3d Cir. 2017). The IJ must conduct a two-step analysis: first, the IJ must make a factual finding as to how public officials will likely act in response to the harm the petitioner fears. *Myrie v. Att'y Gen.*, 855 F.3d 509, 517 (3d Cir. 2017); *Quinteros v. Att'y Gen.*, 945 F.3d 772, 788 (3d Cir. 2019). Next, the IJ must apply the legal standard for acquiescence to determine whether this response establishes that a public official was 'aware[] of [the torturous] activity' and subsequently breaches his or her 'legal responsibility to intervene to prevent such activity.'" *Myrie v. Att'y Gen.*, 855 F.3d 509, 517 (3d Cir. 2017) (citing 8 C.F.R. § 1208.18(a)(7)); *see Quinteros v. Att'y Gen.*, 945 F.3d 772, 788 (3d Cir. 2019).

Here, although the court finds the respondent was not a credible witness, the evidence of record makes clear that he and his family in Nigeria received threats after it was leaked that he would be testifying as a witness in the criminal case against the Omoruyi brothers and Kelechi Ume. Exh. 5. Specifically, the letter from Assistant U.S. Attorney Christopher J. Markham corroborates the respondent's claim in this regard and states:

> [T]he government also has concerns for Mr. Amiegbe's safety. The defendants in *United States v. Omoruyi* shared documents with Amiegbe's name with others in the Nigerian community in Boston (where Mr. Amiegbe currently lives) as well as individuals in Nigeria (where Mr. Amiegbe will be deported after serving his sentence), and Mr. Amiegbe was later contacted by one or more of those individuals prior to trial about his cooperation. The Court in *United States v. Omoruyi* correctly identified this as a violation of the protective order and as threatening Mr. Amiegbe's safety, resulting in the Court adding several conditions of pretrial release on the defendants.

> Mr. Amiegbe and his attorney have also repeatedly identified their concerns for Mr. Amiegbe's safety once he gets deported to Nigeria. These concerns are certainly valid given the violent nature of criminal elements in Nigeria, the fact that Mr. Amiegbe's cooperation against multiple Nigerians has been disclosed to co-conspirators in Nigeria, and the fact that Mr. Amiegbe will be deported to Nigeria after his period of incarceration.

Exh. 5 at 48. Thus, the Court finds that this particular aspect of the respondent's claim is credible and corroborated. Furthermore, based on this information, the Court finds it likely that, if the respondent returns to Nigeria, he will be found by associates of the Omoruyi brothers and severely harmed or killed, which constitutes torture under the CAT. The respondent's family members in Nigeria have received several threats from gang members and other associates of the Omoruyi brothers, so there is a particularized risk of harm to the respondent should he return.

The letter from Assistant U.S. Attorney Markham also reflects the U.S. government's concern over the respondent's safety in Nigeria due to the level of violence committed by criminal elements. *Id.* Further, the 2022 U.S. Department of State Human Rights Report on Nigeria states that "[n]onstate actors committed arbitrary and unlawful killings, disappearances, physical abuse, and other mistreatment," "[c]riminal gangs killed civilians," and there is "serious government corruption." Exh. 5 at 82. The Report also states:

AMIEGBE, Mike Oziegbe
A204-739-223

Many states, in response to increased violence, insecurity, and criminality that exceeded the response capacity of government security forces, utilized local "security" vigilante forces. These local forces usually reported to the state governor. Civilian authorities did not always maintain effective control over the security services. There were reports members of the security forces committed numerous abuses.

Exh. 5 at 80. As such, because of the increasing violence and criminality in Nigeria and the lack of security forces, the Court finds the government will likely fail to protect the respondent from harm from gangs or criminal elements associated with the Omoruyi brothers when he returns to Nigeria. Law enforcement is aware of the threats that the respondent's family has been receiving as a result of his cooperation in criminal cases in the United States, yet there is no indication that the respondent's family is under any type of order of protection. The evidence of record as a whole demonstrates that public officials in Nigeria would acquiesce to the serious physical harm that will likely happen to the respondent.

Accordingly, the Court finds that the respondent has met the requirements for deferral of removal under CAT.

### III.    Conclusion

In light of the foregoing, the following order shall be entered:

### ORDER

**IT IS HEREBY ORDERED** that the respondent's application for deferral of removal under the Convention against Torture is **GRANTED**.

**IT IS FURTHER ORDERED** that the respondent be ordered removed to Nigeria and that his removal be deferred.

_2-5-25_
Date

Hon. Adrian Armstrong
U.S. Immigration Judge

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2025, I electronically filed the foregoing Appendix, and all attachments thereto, with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. *See* Fed R. 25(d). I further certify that a copy of this Petition for Review, and all attachments thereto, will be delivered via CM/ECF system, which will send notice of filing to counsel for Respondent. *See* Fed R. App. P. 25(d).

//s// Alaina Taylor
Alaina Taylor, Esq.
*Counsel for Petitioner*